UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

DON ANTOINE,

        Plaintiff,

    v.

COUNTY OF SACRAMENTO, DARIN
GRIEM, CHRIS BAKER, JOSEPH
REEVE, BRIAN WADE, CHRISTOPHER
BRITTON, and DOES 1 through 25,
inclusive,

        Defendants.

NO. CIV. 06-1349-WBS-GGH

MEMORANDUM AND ORDER RE:
CROSS-MOTIONS FOR SUMMARY
JUDGMENT

----oo0oo----

        Plaintiff Don Antoine filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that defendants County of Sacramento, Darin Griem, Chris Baker, Joseph Reeve, Brian Wade, and Christopher Britton violated his civil rights by assaulting him while he was being held at the Sacramento County Jail.  Plaintiff now moves for summary judgment with respect to all but one of his claims, and defendants have filed a cross-motion for summary judgment.

///

1

I.   <u>Factual and Procedural Background</u>

On the evening of June 18, 2004, plaintiff was involved in a one-car accident in which he ran his car off the road. (Pl.'s Stmt. of Undisputed Facts # 1.)  When firefighters arrived to render aid, plaintiff was belligerent and combative. (Decl. of Robert Chalfant in Supp. of Defs.' Opp'n. to Pl.'s Mot. for Summ. J. Ex. E (Dep. of Chris Johnson).)  The firefighters restrained plaintiff by pinning him to the ground, breaking his nose in the process. (<u>Id.</u> Ex. C (Dep. of Don Antoine).)  The police arrived and subsequently arrested plaintiff on charges of assaulting a firefighter, driving under the influence, and possession of nun chucks in his car. (Pl.'s Stmt. of Undisputed Facts # 3.)  Thereafter, the police brought plaintiff to the Sacramento County Jail. (<u>Id.</u>)

At approximately 11:30 p.m. that night, a registered nurse evaluated plaintiff at the jail and deemed him "fit for incarceration." (<u>Id.</u> # 4.)  At 12:36 a.m., defendants Griem, Baker, Reeve, Wade, and Britton ("individually-named defendants") placed plaintiff in a safety cell[1] because he forcefully refused to follow directions during his booking process and defendants feared he might assault an officer. (<u>Id.</u>)  At 2:33 a.m., plaintiff began excessively hitting and kicking the safety cell door. (Defs.' Resp. to Pl.'s Stmt. of Undisputed Facts # 8.)

---

[1]     The Sacramento County jail's safety cells are empty, padded cells (the walls and floor are made up of rubberized foam padding) used to temporarily confine violent or suicidal prisoners so they cannot hurt themselves. (Pl.'s Mem. in. Supp. of Mot. for Summ. J. 2:16-18.)  The cells measure fifteen by ten feet with an eight by six inch metal drainage grate in the middle of the floor. (<u>Id.</u>)

Despite warnings that he would be restrained if he did not cease such behavior, plaintiff continued to hit and kick the door. (Id. # 9.)  Plaintiff contends that, in front of supervisor defendant Griem, defendants Baker, Reeve, Wade, and Britton then entered his cell and physically attacked him, therein hitting and choking him as they placed him in handcuffs and shackled his feet to the metal drainage grate located at the middle of the safety cell floor.  (Pl.'s Mem. in. Supp. of Mot. for Summ. J. 3:1-2.) Defendants deny that plaintiff was beaten or choked; instead, they assert that plaintiff was merely shackled to the drainage grate to prevent him from injuring himself.  (Defs.' Mem. in Opp'n. to Pl.'s Mot. for Summ. J. 6:5-6.)

Jail deputies removed plaintiff's handcuffs and shackles at 3:26 a.m., approximately fifty-two minutes after plaintiff was initially shackled to the drainage grate.  (Pl.'s Resp. to Defs.' Separate Stmt. of Undisputed Facts # 9.)  The jail deputies eventually released plaintiff from the safety cell at 10:52 a.m.  (Pl.'s Stmt. of Undisputed Facts # 13.)  Just minutes after his release, a nurse at the jail evaluated plaintiff and subsequently sent him to the jail's medical floor to check for possible rib fractures.  (Pl.'s Stmt. of Undisputed Facts # 14.)[2]  As a result of the incident in the safety cell, plaintiff contends that he suffered damage to his chest,

---

[2]     No evidence was submitted regarding whether plaintiff's ribs were actually broken, only that he was sent to the medical floor for evaluation to rule out rib fractures.  In his deposition, plaintiff only said he sustained injuries to his ribs and that they "could be fractured." (Decl. of Robert Chalfant in Supp. of Defs.' Opp'n. To Pl.'s Mot. for Summ. J. Ex. E (Dep. of Don Antoine).)

shoulder, ribs, wrist, face, neck, and throat.  (First Am. Compl. 14.)

On June 19, 2006, plaintiff filed a complaint against the County of Sacramento and unnamed individual defendants, which he later amended to include the individually-named defendants listed above,[3] for violations of 42 U.S.C. § 1983.  (Compl. ¶¶ 20-28.)  Plaintiff now moves for summary judgment with respect to his claims that (a) defendants' practice of shackling pre-trial detainees to the drainage grate is unconstitutional and (b) defendants Baker, Reeve, Wade, and Britton's physical attack on plaintiff while shackling him to the drainage grate--as observed and ratified by their supervisor, defendant Griem--constituted excessive force in violation of his constitutional rights. Plaintiff additionally requests that this court enjoin defendants' practice of shackling pretrial detainees to the drainage grate to prevent further constitutional violations.  In their cross-motion, defendants seek summary judgment with respect to the aforementioned claims as well as plaintiff's claim for deprivation of medical care in contravention of his due process

---

[3]     Plaintiff initially sued the defendants under the fictitious name "Six Unknown Agents of the County of Sacramento," with the intention of amending the complaint once the true identities could be ascertained.  On October 10, 2006, Sacramento County produced an Incident Report pursuant to Rule 26 disclosures that identified the five deputies who placed plaintiff in the safety cell.  (Decl. of Robert Chalfant in Supp. of Pl.'s Mot. to Amend Ex. D.)  Plaintiff subsequently deposed the named deputies between February and May of 2006.  (Decl. of John Scott in Supp. of Pl.'s Mot. to Amend  8.)  On July 24, 2007, this court granted plaintiff's motion to amend his complaint to name the same five deputies as defendants under the contention that they were the parties responsible for the injurious acts and omissions set forth in his complaint.  (July 24, 2007 Order.)

1   rights.

2   II.   <u>Discussion</u>

3        A.   <u>Legal Standard</u>

4             Summary judgment is proper "if the pleadings,

5   depositions, answers to interrogatories, and admissions on file,

6   together with the affidavits, if any, show that there is no

7   genuine issue as to any material fact and that the moving party

8   is entitled to judgment as a matter of law."  Fed. R. Civ. P.

9   56(c).  A material fact is one that could affect the outcome of

10  the suit, and a genuine issue is one that could permit a

11  reasonable jury to enter a verdict in the non-moving party's

12  favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

13  (1986).  The party moving for summary judgment bears the initial

14  burden of establishing the absence of a genuine issue of material

15  fact and can satisfy this burden by presenting evidence that

16  negates an essential element of the non-moving party's case.

17  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

18  Alternatively, the movant can demonstrate that the non-moving

19  party cannot provide evidence to support an essential element

20  upon which it will bear the burden of proof at trial.   <u>Id.</u>

21             Once the moving party meets its initial burden, the

22  non-moving party must "go beyond the pleadings and by her own

23  affidavits, or by 'the depositions, answers to interrogatories,

24  and admissions on file,' [and] designate 'specific facts showing

25  that there is a genuine issue for trial.'"  <u>Id.</u> at 324 (quoting

26  Fed. R. Civ. P. 56(e)).  The non-movant "may not rest upon the

27  mere allegations or denials of the adverse party's pleading."

28  Fed. R. Civ. P. 56(e); <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135,

1   1137 (9th Cir. 1989).  However, any inferences drawn from the

2   underlying facts must be viewed in the light most favorable to

3   the party opposing the motion.  <u>Matsushita Elec. Indus. Co., Ltd.</u>

4   <u>v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  Additionally,

5   the court must not engage in credibility determinations or weigh

6   the evidence, for these are jury functions.[4]  <u>Anderson</u>, 477 U.S.

7   at 255.

8        B.   <u>42 U.S.C. § 1983 Claims</u>

9            Plaintiff brings various claims for violations of his

10  constitutional rights under 42 U.S.C. § 1983.  Section 1983 is

11  not itself a source of substantive rights, but merely provides a

12  method for vindicating federal rights that are conferred

13  elsewhere.  <u>Graham v. Connor</u>, 490 U.S. 386, 394-95 (1989).  To

14  state a claim under § 1983, a plaintiff must plead that (1)

15  defendants acted under color of law, and (2) defendants deprived

16  plaintiff of rights secured by the Constitution or federal

17  statutes.  <u>Gibson v. U.S.</u>, 781 F.2d 1334, 1338 (9th Cir. 1986).

18  As a pretrial detainee, plaintiff asserts that defendants

19  deprived him of three constitutional rights that arise under the

20  due process clause of the Fourteenth Amendment: (1) his right to

21

22       [4]   Both parties have moved, in the alternative, for
    summary adjudication.  While caselaw exists suggesting that a
23  party may move for summary adjudication of individual issues,
    <u>see, e.g.</u>, <u>Barker v. Norman</u>, 651 F.2d 1107, 1123 (5th Cir. 1981);
24  <u>First Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.</u>, 977 F. Supp.
    1051 (S.D. Cal. 1997), this is not the type of motion Rule 56
25  originally contemplated.  Moreover, motions for summary
    adjudication of issues request that the court resolve issues that
26  dispose of neither a party nor a claim, and seldom accomplish
    anything.  Importantly, neither party distinguishes between their
27  general request for summary judgment and particular issues apt
    for summary adjudication.  Therefore the court's following
28  discussion applies to both requests.

                                  6

1  be free of punishment prior to an adjudication of guilt; (2) his
2  right to be free from the use of excessive force; and (3) his
3  right to medical care.

4          1.    Fourteenth Amendment Right to Be Free of
5                Punishment

6          Plaintiff seeks a declaration that the Sacramento
7  County Jail's general practice of shackling pretrial detainees to
8  the drainage grate ("the practice") amounts to a per se
9  constitutional violation.  Specifically, plaintiff claims that
10 the practice is a punitive measure that effectively deprives
11 pretrial detainees of their liberty interest without due process
12 of the law.  Pretrial detainees indeed have a substantive due
13 process right against practices or restrictions that amount to
14 punishment.  United States v. Salerno, 481 U.S. 739, 746 (1987);
15 Bell v. Wolfish, 441 U.S. 520, 535 (1979); Redman v. County of
16 San Diego, 942 F.2d 1435, 1440-41 (9th Cir. 1991) (en banc).
17 This right is violated if such practices are "imposed for the
18 purpose of punishment." Bell, 441 U.S. at 535.  There is no
19 constitutional infringement, however, if practices are "but an
20 incident of some other legitimate government purpose." Id.

21              a.   Defendant County of Sacramento

22         "A municipality may be held liable under a claim
23 brought under § 1983 only when the municipality inflicts an
24 injury, and it may not be held liable under a respondeat superior
25 theory." Gibson v. County of Washoe, 290 F.3d 1175, 1185 (9th
26 Cir. 2002) (citing Monell v. Dept. of Soc. Servs. of N.Y., 436
27 U.S. 658, 694,(1978)).  In considering whether a municipality
28 itself violated a person's rights or directed its employee to do

1  so, the focus is on the municipality's "policy statement,

2  ordinance, regulation, or decision officially adopted and

3  promulgated by that body's officers." <u>City of St. Louis v.</u>

4  <u>Praprotnik</u>, 485 U.S. 112, 121 (1988) (quoting <u>Monell</u>, 436 U.S. at

5  690).  Such a practice can either be an official municipal policy

6  or merely a pervasive custom, <u>L.A. Police Protective League v.</u>

7  <u>Gates</u>, 907 F.2d 879, 889 (9th Cir. 1990), and liability will

8  arise only if a plaintiff can demonstrate both that a

9  constitutional deprivation occurred and that the municipality was

10 the "moving force behind the injury alleged." <u>City of Canton v.</u>

11 <u>Harris</u>, 489 U.S. 378, 385 (1989).

12        It is undisputed that the Sacramento County Jail

13 employs the practice of shackling pretrial detainees to the

14 drainage grate, which they assert is implemented only when

15 detainees display violent behavior that may result in physical

16 harm to themselves or others.  (Defs.' Mem. in Opp'n. to Pl.'s

17 Mot. for Summ. J. 6:5-6.)  Thus, the proper consideration is

18 whether punitive intent can be inferred from the nature of the

19 practice.  Plaintiff proffers three arguments in support of his

20 assertion that the practice is an impermissible punishment as

21 opposed to a permissible procedure employed to ensure the safety

22 of violent detainees and those around them.

23        First, plaintiff argues that the practice essentially

24 serves a punitive function as opposed to a legitimate government

25 interest because shackling even a violent pretrial detainee to

26 the drainage grate does not actually prevent the detainee from

27 injuring himself.  Instead, plaintiff argues that a pretrial

28 detainee who is hitting or smashing himself against the safety

cell wall or door could, subsequent to being shackled, will simply begin smashing himself against the ground or the drainage grate itself.

However, plaintiff underestimates the effectiveness of the practice's safety efforts.  Jail deputies and nurses reported several past incidents in which pretrial detainees injured themselves by banging themselves into the safety cell door, which they describe as a heavy, unyielding object.  (Decl. of Robert Chalfant in Supp. of Defs.' Opp'n. to Pl.'s Mot. for Summ. J. Ex. J (Dep. of Brian Wade)); (Supplemental Decl. Of John Houston Scott in Opp'n. to Defs.' Mot. for Summ. J. Ex. 3 (Dep. of Gloy Blugh).)  Shackling violent detainees to the drainage grate, which is located at the center of the safety cell, eliminates the possibility that they can smash themselves against the cell door, and it would appear particularly effective in cases where a violent detainees take a running or jumping start.  Moreover, the act of keeping a violent detainee in the center of the cell also appears to facilitate the ability of deputies and medical personnel to safely enter the cell area to evaluate the detainee and/or provide necessary support.

While plaintiff may be hypothesize alternative methods of restraint,[5]  this mental exercise alone cannot recast

_____

[5]    Plaintiff implies that a "Prostraint Chair" might have been a better alternative.  A "Prostraint Chair" is a safety mechanism that employs shackles to fasten down inmates and their extremities against the back of a large, heavy chair.  By defendants' account, this is an immensely restrictive practice used only with the most combative and violent detainees/inmates. (Decl. of John Houston Scott in Supp. of Mot. for Summ. J. Ex. 7 (Dep. of Darin Griem).)  By comparison, defendants assert that shackling detainees/inmates to the grate is a less restrictive

1  defendants' proffered interest in the safety of pretrial

2  detainees and those around them as a punitive measure.   A

3  reasonable relationship between a governmental interest and the

4  challenged practice does not require an "exact fit."  Mauro v.

5  Arpaio, 188 F.3d 1054, 1060 (9th Cir. 1999) (en banc).   Nor does

6  it require showing a "least restrictive alternative," Thornburgh

7  v. Abbott, 490 U.S. 401, 410-12 (1989), because otherwise "every

8  administrative judgment would be subject to the possibility that

9  some court somewhere would conclude that it had a less

10 restrictive way of solving the problem at hand."  Id. at 410-11

11 (internal quotations omitted).   In fact, a rational practice

12 should not be disturbed by the courts even if such practice

13 ultimately fails to advance its targeted purpose.  See Mauro, 188

14 F.3d at 1060 ("[I]t does not matter whether we agree with the

15 defendants or whether the policy in fact advances the jail's

16 legitimate interests.  The only question that we must answer is

17 whether the defendants' judgment was 'rational,' that is, whether

18 the defendants might reasonably have thought that the policy

19 would advance its interests.").

20        Second, plaintiff contends the practice is

21 constitutionally unsanitary.  Because the safety cells do not

22 have a toilet, the grate could hypothetically function as a drain

23 for excrement.  (Decl. of John Houston Scott in Supp. of Pl.'s

24 Mot. for Summ. J. Ex. 7 (Dep. of Darin Griem).)  Thus, plaintiff

25 argues that the practice could cause detainees to come into

26 contact with urine, feces, or vomit.  To support his contention,

27 _____

28 measure, requires the attention of fewer deputies, and takes
   significantly less time to set up.  (Id.)

1  plaintiff cites to <u>Martino v. Carey</u>, 563 F.Supp 984 (D.C. Or.
2  1983); in that case, the District Court of Oregon found that
3  housing inmates in cells overflowing with sewage violated the
4  Eighth Amendment.  <u>Id.</u> at 999.

5       Despite the repugnancy of this hyperbolic analogy,
6  plaintiff offers no evidence suggesting that any amount of sewage
7  or bodily waste has ever been either present in the safety cell
8  or near the drainage grate when any inmate was placed there.
9  Notably, based on his own experience in the safety cell,
10 plaintiff correctly identified the drainage grate based on its
11 predominant purpose as a conduit for water when the cell is
12 cleaned. (Decl. of Robert Chalfant in Supp. of Defs.' Opp'n. To
13 Pl.'s Mot. for Summ. J. Ex. E (Dep. of Don Antoine) (plaintiff
14 stated that he was shackled to "a grate at the bottom of the cell
15 where water drains out").)

16      Third, plaintiff contends that the practice lacks an
17 explicit policy detailing its parameters and thus relies too
18 heavily on deputy discretion.  This oversight, plaintiff argues,
19 permits an arbitrary and punitive employment of the practice.
20 While plaintiff is correct that defendants do not have an
21 explicit policy specific to the practice of shackling detainees
22 to the drainage grate, defendants do have a written policy
23 governing the use of <u>all</u> restraints in the safety cell--which
24 intuitively includes the use of handcuffs and shackles employed
25 during the practice. (Decl. of John Houston Scott in Supp. of
26 Pl.'s Mot. for Summ. J. Ex. 9 ("Jail Operations Order 3/100 Use
27 of Restraints"); Defs.' Opp'n. to Pl.'s Mot. for Summ. J. 8-9.)
28 This extensive policy not only specifies when and how restraints

1  may be used, but it also requires medical and custodial

2  monitoring as well as documentation of each incident that

3  involves the use of any restraint method.  (Decl. of John Houston

4  Scott in Supp. of Pl.'s Mot. for Summ. J. Ex. 9 ("Jail Operations

5  Order 3/100 Use of Restraints").)   In addition, the policy

6  expressly prohibits deputies from using restraints as a form of

7  punishment.  (Id.)

8         Moreover, a certain level of discretion in the

9  employment of the practice is appropriately accorded to the

10  government and its officers, whose legitimate interests stem from

11  their need to manage the facility in which the individuals are

12  detained.  Bell v. Wolfish, 441 U.S. 520, 540 (1979).  As a

13  general matter, courts ordinarily defer to the expert judgments

14  and professional expertise of corrections officials.  Id. at

15  547-48.  This policy comes within the United States Supreme

16  Court's admonition that courts should rely heavily on

17  professional expertise in determining the proper means for

18  carrying out security responsibilities.  In Bell, the Supreme

19  Court stated:

20         In determining whether restrictions or conditions are
       reasonably related to the Government's interest in
21       maintaining security and order and operating the
       institution in a manageable fashion, courts must heed our
22       warning that "[s]uch considerations are peculiarly within
       the province and professional expertise of corrections
23       officials, and, in the absence of substantial evidence in
       the record to indicate that the officials have
24       exaggerated their response to these considerations,
       courts should ordinarily defer to their expert judgment
25       in such matters."

26  Id. at 540 n.23 (quoting Pell v. Procunier, 417 U.S. 817, 827

27  (1974)).  Plaintiff has produced no evidence that deputies in the

28  Sacramento County Jail have, as a general matter, exaggerated

1  their response in maintaining security, order, and operation.

2  Thus, the court will appropriately defer to the deputies

3  expertise and judgment in the implementation of the practice.

4         In <u>Anderson v. County of Kern</u>, 45 F.3d 1310 (9th Cir.

5  1995), the Ninth Circuit affirmed the denial of injunctive relief

6  to plaintiff inmates and detainees who alleged that the use of

7  safety cells for suicidal and mentally disturbed inmates and

8  detainees violated the Constitution.  <u>Id.</u> at 1315.  The court

9  found that while the safety cell is admittedly a very severe

10  environment, it is employed in response to very severe safety

11  concerns.  <u>Id.</u> at 1314 (noting that some detainees and/or inmates

12  became so violent and such a danger to themselves "that temporary

13  placement in a safety cell was needed in order to deprive the

14  prisoners of all means of harming themselves").

15         Significantly, the Ninth Circuit's opinion also

16  acknowledged that if inmates or detainees in the safety cell "are

17  violent, they may be shackled to the grate."  <u>Id.</u> at 1313.

18  Nonetheless, the court--fully aware of the prevalent practice of

19  shackling detainees to the drainage grate--approved the use of

20  safety cell detention.  Further, the court noted that the

21  plaintiffs' own expert witness had testified that while it would

22  inappropriate to secure just "any prisoner" to the drainage

23  grate, it nonetheless "would not be inappropriate to restrain

24  violent prisoners in this manner."  <u>Id.</u> at 1313-14.

25         Plaintiff fails to show that defendant County of

26  Sacramento's general practice of shackling pretrial detainees to

27  the drainage grate amounts to a violation of a his Fourteenth

28  Amendment right to be free of punishment.  Accordingly, the court

will deny plaintiff's motion for summary judgment with respect to his claim that the practice amounts to a per se violation of the Fourteenth Amendment.

### b. Individually-Named Defendants

Because the court finds that plaintiff has not shown that the general practice of shackling pretrial detainees to the drainage grate is per se unconstitutional, it follows that he is also unable to show that the deputies who act within the confines of the practice deprive a pretrial detainee of his Fourteenth Amendment right to be free of punishment.[6]  Accordingly, the

---

[6]     Had the court found the practice to be a constitutional violation, the individual defendants would nonetheless be entitled to assert the affirmative defense of qualified immunity. Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitution rights of which a reasonable person should have known." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)) (internal quotations omitted).  A right is clearly established when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Camarillo v. McCarthy, 998 F.2d 638, 640 (9th Cir. 1993) (citing Anderson v. Creighton, 483 U.S. 635 (1987)) (internal quotations omitted).

Here, while plaintiff's Fourteenth Amendment right to be free of punishment is clearly established, the contours are such that a reasonable deputy would be hard-pressed to understand that shackling a violent detainee to the middle of his cell to stop him from actively harming himself or others clearly violates that constitutional right.  Significantly, plaintiff offers only a series of conclusory assertions that the individually-named defendants--insofar as they simply shackled him to the drainage grate--violated his rights as opposed to offering any actual evidence that a reasonable deputy should have known that employment of the general practice was clearly unlawful. See Sweaney v. Ada County, 119 F.3d 1385, 1389 (9th Cir. 1997) (in response to the defense of qualified immunity, plaintiff must offer more than general conclusory allegations that the defendants violated a constitutional right--he must show "that the particular facts of his case support the claim of a clearly established right") (citing Backlund v. Barnhart, 778 F.2d 1386, 1389 (9th Cir. 1985)).

1   court will deny plaintiff's motion for summary adjudication with

2   respect to his claims that the individually-named defendants

3   violated his constitutional rights in following the general

4   procedure of shackling pretrial detainees to the drainage grate.

5                    c.   Injunctive Relief

6            A state agency may be enjoined from committing

7   constitutional violations where there is proof that officers

8   within the agency have engaged in a persistent pattern of

9   unconstitutional conduct, Allee v. Medrano, 416 U.S. 802, 815-16

10  (1974).  While this request would ultimately fail because--as

11  discussed above--plaintiff has not shown that the practice

12  violates the Constitution, the court need not entertain

13  plaintiff's request in the first instance because he lacks

14  standing to claim injunctive relief.[7]

15           The Article III "case or controversy" requirement

16  restricts federal jurisdiction to those cases where the

17  plaintiffs can maintain that their injury or the threat of future

18  injury by the defendants is "both 'real and immediate,' not

19  'conjectural or hypothetical.'"  City of Los Angeles v. Lyons,

20  461 U.S. 95, 102 (1983).

21           Here, plaintiff cannot show that he will again be

22  arrested, again combat deputies during the booking process, and

23

24       [7]   The Ninth Circuit had previously held that, where
     claims for damages and equitable relief arise from the same
25   "operative facts and legal theory," a plaintiff with standing to
     seek damages also has standing to request injunctive and
26   declaratory relief.  See Nava v. City of Dublin, 121 F.3d 453, 456
     (9th Cir. 1997) (citing Gonzales v. City of Peoria, 722 F.2d 468
27   (9th Cir. 1983)).  However, the Ninth Circuit later overruled
     Nava in Hodgers-Durgin v. De La Vina, 199 F.3d 1037 (9th Cir.
28   1999), and thus now refuses to conflate the claims for standing
     purposes alone.  Id. at 1040 n.1.

                                15

again be violent to the point where he would be shackled to the drainage grate for his own safety and the safety of others.  <u>See</u> <u>id.</u> at 109 (finding that if plaintiff "has made no showing that he is realistically threatened by a repetition of his experience . . . then he has not met the requirements for seeking an injunction in a federal court").  Accordingly, the court will deny plaintiff's request for injunctive relief.

       2.   <u>Fourteenth Amendment Right to be Free from the Use</u> <u>of Excessive Force</u>

     The Due Process clause protects pretrial detainees from the use of excessive force that amounts to punishment.  <u>Graham v.</u> <u>Connor</u>, 490 U.S. 386, 395 n.10 (1989).  While it is uncertain whether the Fourth Amendment's prohibition against unreasonable searches and seizures continues to protect individuals during pretrial detention, <u>id.</u>, the Ninth Circuit has determined that the Fourth Amendment sets the "applicable constitutional limitations" for considering claims of excessive force during pretrial detention.  <u>Pierce v. Multnomah County</u>, 76 F.3d 1032, 1043 (9th Cir. 1996).  Thus, though a pretrial detainee's excessive force claim arises under the Due Process clause, the claim is appropriately analyzed under the Fourth Amendment's "objective reasonableness" standard.  <u>Graham</u>, 490 U.S. at 395. This standard "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing government interests at stake."  <u>Id.</u> at 396 (quoting <u>United States v. Place</u>, 462 U.S. 696, 703 (1983)).  When employing the balancing test, the court must pay "careful attention to the facts and circumstances in

16

1  each particular case." <u>Id.</u>

2                    a.   <u>Defendant County of Sacramento</u>

3            Despite alleging in his complaint that the defendant

4  County of Sacramento "authorized, encouraged and condoned the use

5  of excessive force against inmates in the Sacramento County Jail

6  in violation of the United States Constitution," plaintiff has

7  now decided not to bring an excessive force claim against the

8  County. (Pl.'s Reply to Defs.' Opp'n. to Pl.'s Mot. for Summ. J.

9  3:4-5 ("Don Antoine is only pursuing an excessive[]force claim

10 against the individually-named Defendants, not against the

11 County.").)

12           Accordingly, the court will grant defendants' motion

13 for summary judgment with respect to plaintiff's allegations of

14 excessive force against defendant County of Sacramento.

15                   b.   <u>Defendants Baker, Reeve, Wade, and Britton</u>

16           Plaintiff contends that the individually-named

17 defendants used excessive force in violation of his

18 constitutional rights when they shackled him to the drainage

19 grate.  Specifically, plaintiff asserts that defendants Baker,

20 Reeve, Wade, and Britton entered his cell to shackle him and then

21 commenced an unprovoked attack on him--which included hitting him

22 in vital spots and putting him in a chokehold--resulting in

23 several purported injuries. (Pl.'s Mem. in Supp. of Mot. for

24 Summ. J. 2-3.)  To supplement his contention, plaintiff points

25 out that he was deemed "fit for incarceration" by the Sacramento

26 County jail's medical unit upon his arrival, only to be sent back

27 to the medical floor for an examination into possible rib

28 fractures when he was released from the safety cell over eleven

17

hours later.  (Decl. of John Houston Scott Ex. 1 ("Special Needs Form"), Ex. 12 ("Medical Expedite Booking").)  Such behavior on the part of the individually-named defendants, if taken as the truth, would constitute excessive force and an unreasonable intrusion on plaintiff's constitutional interests.  See Ruvalcaba v. City of Los Angeles, 167 F.3d 514, 519-20 (9th Cir. 1999) (finding that an officer's action in kicking and striking plaintiff constituted excessive force).

In response, defendants Baker, Reeve, Wade, and Britton contend that plaintiff is unable to place any of them in the safety cell at the time of the alleged attack.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.").  Indeed, plaintiff acknowledges that he is unable to remember exactly who entered the safety cell to shackle him, which he contends is due to the fact that he was immediately attacked and forced into a protective position.  While the defendants admit that they were the ones who initially placed plaintiff in the safety cell, each has testified in their individual depositions that they have no recollection whether or not they re-entered the safety cell two hours later to shackle him to the drainage grate.  Defendant Griem, the supervisor on duty the night of the arrest, admits that he observed deputies shackling plaintiff to the drainage grate; however, he also asserts that he has no recollection as to who entered the cell.

Due to the lack of direct evidence, plaintiff must rely on circumstantial evidence to place defendants Baker, Reeve, Wade, and Britton at the scene the attack.  The Ninth Circuit

1    has explicitly held that police misconduct may be proved through

2    circumstantial evidence.  <u>Santos v. Gates</u>, 287 F.3d 846, 852 (9th

3    Cir. 2002) ("Nowhere in our cases have we held that police

4    misconduct may be proved only through direct evidence.").  To

5    survive summary judgment, a plaintiff must offer circumstantial

6    evidence that is consistent with an inference of illegal conduct

7    and permitting that inference must not be significantly harmful.

8    <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,

9    587 (1986).  Plaintiff offers two separate channels of evidence

10   that he contends sufficiently link the four defendants to his

11   attack.

12          First, plaintiff notes that the Sacramento County

13   Incident Report detailing his detention that night ("Incident

14   Report") lists five deputies--defendants Griem, Baker, Reeve,

15   Wade, and Britton--as the officers who initially put plaintiff

16   into the safety cell.  (Decl. of John Houston Scott in Supp. of

17   Pl.'s Mot. for Summ. J. Ex. 2 ("Safety/Segregation Cell Incident

18   Report").)  While the Incident Report is silent as to who entered

19   the safety cell two hours later to shackle plaintiff to the

20   drainage grate, defendant Griem--the supervisor officer that

21   night--stated during his deposition that he would assume that

22   defendants Baker, Reeve, Wade, and Britton re-entered to safety

23   cell to shackle plaintiff to the drainage grate because otherwise

24   the Incident Report would "list different officers in the report

25   if it wasn't [them]."[8]  (Decl. of John Houston Scott in Supp. of

26

27          [8]   Consistent with plaintiff's theory that all four
     officers were involved in the alleged attack, Sacramento County
28   deputy Aaron Marino testified in his deposition that

                                    19

1  Pl.'s Mot. for Summ. J. Ex. 7 (Dep. of Darin Griem).)

2        Second, plaintiff calls the court's attention to

3  defendants' brief filed in opposition to plaintiff's June 13,

4  2007 motion to amend the complaint.  Plaintiff, who had initially

5  sued the defendants under the fictitious names, sought to add

6  defendants' names in light of the release of the Incident Report.

7  Defendants opposed the motion on the grounds that plaintiff was

8  dilatory in adding the individually-named defendants because the

9  Incident Report--made available to plaintiff almost eight months

10 earlier--had clearly listed the names of the deputies "involved

11 in the incident [plaintiff] complains of, including that

12 [plaintiff] was handcuffed to the grate on the floor for his

13 safety." (Defs.' Opp'n. to Pl.'s Mot. to Amend 8:5-7.)  The

14 opposition further insinuates that defendants Baker, Reeve, Wade,

15 and Britton were present in the cell when it notes that "[i]f

16 plaintiff had acted diligently, perhaps the individuals may have

17 remembered [plaintiff] or the incident he complains of."  (Id.)

18       Based on the inference created by defendant Griem's

19 deposition testimony--i.e., that the Incident Report would have

20 noted a change in personnel if anyone other than Baker, Reeve,

21 Wade, and Britton had shackled plaintiff--as well as defendants'

22 prior position regarding the four defendants' involvement in the

23 incident, a jury would not be unreasonable if it concluded that

24 the individual defendants were the ones who shackled him.

25       Even if the above evidence allows a reasonable jury to

26

27 _____

28 approximately four deputies would be required to shackle a
   detainee to the drainage grate.  (Decl. of John Houston Scott in
   Supp. of Pl.'s Mot. for Summ. J. Ex. 5 (Dep. of Aaron Marino).)

20

1   place defendants at the scene of the alleged attack, defendants

2   argue that the Ninth Circuit's holding in Jones v. Williams, 297

3   F.3d 930 (9th Cir. 2002) dictates that plaintiff must show the

4   "integral participation" of each defendant in the illegal conduct

5   before they may be held liable under a group theory.  Id. at 935

6   (citing Chuman v. Wright, 76 F.3d 292, 294 (9th Cir. 1996)).

7         While the proposition cited in Jones is correct, the

8   case is factually distinct.  Jones dealt with an impermissible

9   jury instruction that would have invited the jury to find that

10  all of the defendant officers were liable for merely being

11  present at an alleged unreasonable search of plaintiff's home.

12  Id. at 934-35.  Because the plaintiff in Jones had no idea which

13  of the officers had destroyed the personal items inside her home,

14  she sought group liability.  Id.  However, the court reasoned

15  that due to the lack of evidence that the officers "who simply

16  remained outside" were integral participants in the unlawful

17  conduct, an instruction to the contrary would have been

18  impermissible.  Id. at 939.  Significantly, while the Ninth

19  Circuit affirmed the district court's refusal to give the

20  instruction, the court nonetheless approved the initial

21  submission of the case to the jury to allow it to hear each

22  party's testimony and to draw all permissible inferences about

23  the liability of the individual officers.  See Id. at 936 ("The

24  permissible inferences in [plaintiff's] proposed instruction were

25  adequately covered by the fact that the court submitted the case

26  to the jury.").

27         In contrast to Jones, the instant cross-motions are

28  summary judgment requests, not an attempt to submit an

21

1  overarching jury instruction.  On summary judgment, the court

2  must view the evidence most favorably to the party against whom

3  the motion is made and, without weighing the credibility of

4  witnesses, the court must also give that party the benefit of all

5  reasonable inferences from the evidence.  McCollum v. Smith, 339

6  F.2d 348, 349 (9th Cir. 1964).  If conflicting inferences may be

7  drawn from the facts, the case must go to the jury.[9]  Neely v.

8  St. Paul Fire and Marine Ins. Co., 584 F.2d 341, 345 (9th Cir.

9  1978).

10            Although plaintiff is unable to identify precisely

11  which deputy delivered exactly which blow or applied the

12  chokehold, he has both developed and presented sufficient

13  evidence to support a reasonable inference that the individual

14  officers who had physical contact with him during the shackling

15  process indeed participated in the alleged beating.

16  Significantly, plaintiff has done more than simply place the

17  officers at the scene of the altercation and assert a group

18  liability theory.  Instead, he has presented undisputed evidence

19  that (1) when he arrived at the jail at approximately 11:30 p.m.,

20  he was deemed "fit for incarceration" by the jail's medical unit;

21  (2) the deputies entered the safety cell and shackled plaintiff

22  to the drainage grate at 2:33 a.m.; and (3) plaintiff was

23  released from the cell at 11:53 a.m. and immediately sent back to

24  the medical floor by a nurse to check for possible rib fractures.

25

26            Given plaintiff's allegations of force in combination

27  _____

28         [9]    As mentioned above, even the Jones court approved
    submission of that case to the jury.  Jones, 297 F.3d at 936.

with the chronological evidence, a jury would not be unreasonable
if it concluded that plaintiff was indeed the victim of an
unprovoked attack that amounted to illegal conduct.[10]   See Lolli
v. County of Orange, 351 F.3d 410, 417-18 (9th Cir. 2003)
(distinguishing Jones by denying summary judgment against a
plaintiff who--despite his inability to identify which officer
did exactly what harm to him during his alleged
altercation--presented enough evidence "to create the necessary
inference that the deputies were integral participants in the
alleged unlawful act") (internal citations omitted).

        Because there is a genuine issue of material fact as to
whether defendants Baker, Reeve, Wade, and Britton engaged in
excessive force while shackling plaintiff to the drainage grate,
neither party's dispositive motion can be granted.   Accordingly,
the court will deny plaintiff and defendants' cross-motions for
summary judgment with respect to plaintiff's claim that
defendants Baker, Reeve, Wade, and Britton used excessive force.

                    c.   Defendant Griem

        Plaintiff contends that defendant Griem, as supervising

_____

        [10]    The individually-named defendants also contend that,
assuming arguendo the court finds they were present in the safety
cell during the incident, plaintiff still cannot establish that
they used excessive force against him.   Defendants' rely on a
Sacramento County Jail policy that mandates deputies prepare a
casualty and/or crime report whenever physical force is used that
results in injury to anyone involved.   (Decl. of John Houston
Scott in Supp. of Pl.'s Mot. for Summ. J. Ex. 8 ("Jail Operations
Order 3/110 Use of Force").)   It follows, defendants argue, that
if they had attacked plaintiff as he alleges, this use of force
would have been documented.   However, this conclusory
presumption, standing alone, is insufficient to rebut plaintiff's
allegations and proffered evidence.   It would not be unreasonable
to assume that officers who had engaged in the kind of brutal
beating of a prisoner such as alleged here by plaintiff would
choose not to submit a report of their misconduct.

1   officer, is personally liable because he ratified his

2   co-defendants actions and/or refused to intervene during their

3   use of excessive force.  In response, defendant Griem asserts

4   that he only observed the proper shackling of plaintiff to the

5   drainage grate and thus cannot be shown to have personally

6   participated in any alleged use of excessive force.

7        In the case of a supervisor, "individual liability

8   hinges upon his participation in the deprivation of

9   constitutional rights."  Larez v. City of Los Angeles, 946 F.2d

10  630, 646 (9th Cir. 1991).  For defendant Griem to be held liable

11  in his individual capacity, plaintiff must demonstrate that (1)

12  defendant Griem's "own culpable action or inaction in the

13  training, supervision, or control of his subordinates" caused the

14  constitutional injury; (2) Griem "acquiesce[d] in the

15  constitutional deprivations of which [the] complaint is made;" or

16  (3) Griem's conduct showed a "reckless or callous indifference to

17  the rights of others."  Id. at 646 (internal citations omitted).

18  Based on the disputed inference of illegal conduct addressed

19  above, there is a genuine issue of material fact as to whether

20  defendant Griem properly controled his subordinates, acquiesced

21  in the constitutional deprivation, or showed a callous

22  indifference for plaintiff's constitutional rights.

23       Accordingly, the court will deny plaintiff and

24  defendants' cross-motions for summary judgment with respect to

25  plaintiff's claim that defendant Griem is personally liable for

26  his co-defendants' use of excessive force.

27            3.   Fourteenth Amendment Right to Medical Care

28            Pretrial detainees' due process rights to medical care

24

are at least as broad as the those required by the Eighth
Amendment for convicted prisoners.  City of Revere v. Mass. Gen.
Hosp., 463 U.S. 239, 244 (1983) (citing Bell v. Wolfish, 441 U.S.
520, 535 n.16, 545 (1979)).  Since it may suffice for Eighth
Amendment liability that prison officials were deliberately
indifferent to the serious medical needs of their prisoners, see
Estelle v. Gamble, 429 U.S. 97, 104 (1976), it follows that such
deliberate indifference must also be enough to satisfy the fault
requirement for due process claims based on the medical needs of
pretrial detainees.  County of Sacramento v. Lewis, 523 U.S. 833,
849-50 (1998).

        Under the deliberate indifference standard, a person is
liable for denying a prisoner needed medical care only if the
person "knows of and disregards an excessive risk to inmate
health and safety."  Farmer v. Brennan, 511 U.S. 825, 837-38
(1994).  If a person should have been aware of the risk, but was
not, then the person has not violated the Eighth Amendment--no
matter how severe the risk.  Jeffers v. Gomez, 267 F.3d 895, 914
(9th Cir. 2001).  But if a person is aware of a substantial risk
of serious harm, the person may be liable for neglecting a
detainee's serious medical needs on the basis of the person's
action or inaction.  Farmer, 511 U.S. at 842.

                a.   Defendant County of Sacramento

        Plaintiff alleges that defendant County of Sacramento
violated his right to receive adequate medical care while
detained in the Sacramento County jail.  To find the County of
Sacramento liable, plaintiff must show that it (1) had a policy
that posed a substantial risk of serious harm to plaintiff and

25

(2) knew that its policy posed this risk.  <u>Farmer</u>, 511 U.S. at
837.

        Plaintiff neither contends nor offers any evidence to
suggest that defendant County of Sacramento's medical policy is
inadequate or poses a substantial risk of serious harm.  Rather,
plaintiff disputes only whether this policy "was followed" by the
individually-named defendants during his detention (Pl.'s Opp'n
to Defs.' Separate Stmt. of Undisputed Facts # 2 ("The issue is
whether medical attention was provided at any time during
Antoine's confinement in the safety cell.").)  Because "a
municipality cannot be held liable under § 1983 on a respondeat
superior theory," <u>Monell v. Dep't of Soc. Servs. of N.Y.</u>, 436
U.S. 658, 691 (1978), defendant County of Sacramento cannot be
held accountable for the actions of its employees.[11]

        Accordingly, the court will grant defendants' motion
for summary judgment with respect to plaintiff's claim that
defendant Sacramento County deprived him of his constitutional
right to medical care.

                    b.   <u>Individually-Named Defendants</u>

        Plaintiff also alleges that the individually-named
defendants violated his right to receive adequate medical care by
not responding to his pleas for medical assistance and
disregarding several policies related to his detention in the

---

        [11]   While a municipality may be liable under § 1983 when
its failure to train employees amounts to "deliberate
indifference" to the rights of persons with whom the police come
into contact, <u>City of Canton v. Harris</u>, 489 U.S. 378, 388
(1989), plaintiff neither alleges, nor offers any evidence, that
defendant County of Sacramento failed to properly train its
employees.

                                26

1   safety cell.

2          Plaintiff asserts that prior to being shackled to the
3   drainage grate he repeatedly sought medical assistance for his
4   nose--which was purportedly broken during his post-accident
5   confrontation with the firefighters--by yelling for help and
6   repeatedly hitting the safety cell door to get the attention of
7   the individually-named defendants.  As a general matter, jail
8   deputies will promptly relay a detainee's request for medical
9   assistance to a nurse (Decl. of John Houston Scott in Supp. of
10  Pl.'s Mot. for Summ. J. (Dep. of Darin Griem).)  Thus, plaintiff
11  contends that the individually-named defendants' refusal to
12  adhere to his desire to see a nurse show that they were
13  deliberately indifferent to his medical needs.

14         Defendants state that plaintiff never requested medical
15  assistance, but instead became excessively violent as he
16  continuously banged on the safety cell door.  Though both sides'
17  recollection of the facts conflict, the evidence taken in the
18  light most favorable to plaintiff does not show that the
19  individually-named defendants were aware of an excessive risk to
20  his health and safety but affirmatively chose to disregard it.
21  While the awareness of a serious risk to medical needs can be
22  inferred from circumstantial evidence, <u>Farmer</u>, 511 U.S. at 842,
23  the evidence here suggests that plaintiff's condition was far
24  from dire.  Plaintiff's purported nose injury occurred prior to
25  his arrival at the Sacramento County Jail.  However, once at the
26  jail, his condition was evaluated and he was deemed "fit for
27  incarceration."  Thus, plaintiff had no outstanding medical
28  issues that would prohibit detention.  Under this premise, even

27

1    if plaintiff's recollection is believed, the court cannot say

2    that the individually-named defendants were deliberately

3    indifferent to a serious medical condition.

4          Plaintiff further contends that the individually-named

5    defendants disregarded several policies related to safety cell

6    detention and the use of restraints which amounted to a

7    deprivation of his right to medical care.  (Decl. of John Houston

8    Scott in Supp. of Pl.'s Mot. for Summ. J. Ex. 9 ("Jail Operations

9    Order 3/100 Use of Restraints"), Ex. 12 ("Safety and Segregation

10   Cell Use").)  While an evidentiary review of plaintiff's

11   contentions does disclose some notable violations of official

12   policy,[12]  plaintiff's inability to tie any of the violations to

13   the individually-named defendants is fatal to his claim.  Unlike

14   his claims against the individually-named defendants' use of

15   excessive force, plaintiff cannot show that any of them were an

16   integral participant in his alleged deprivation of medical care.

17   At most, plaintiff's allegation is that unnamed medical and

18   custodial staff members did an unsatisfactory job of adhering to

19   Sacramento County Jail policy.[13]

20   _____

21        [12]   From the court's perspective, plaintiff's valid
     assertions include that: (1) he was not evaluated by a nurse when
22   initially placed in the safety cell in violation of the "Safety
     and Segregation Cell Use" manual (Decl. of John Houston Scott in
23   Supp. of Pl.'s Mot. for Summ. J. Ex. 12 ("Safety and Segregation
     Cell Use")); (2) a nurse was not notified within fifteen minutes
24   from the time he was shackled to the drainage grate in violation
     of Jail Operations Order 3/100 "Use of Restraints" (Id. Ex. 9
25   ("Jail Operations Order 3/100 Use of Restraints")); and (3) he
     was left in the safety cell for a total of eight hours in
26   violation of the "Safety and Segregation Cell Use" manual. (Id.
     Ex. 12 ("Safety and Segregation Cell Use").)

27        [13]   It does not appear to be the individually-named
28   defendants' fault that plaintiff, as he asserts, was not
     medically evaluated upon entrance into the safety cell.  Rather,

1    Accordingly, the court will grant defendants' motion
2  for summary judgment with respect to plaintiff's claim that the
3  individually named defendants' deprived him of his right to
4  medical care.

5    IT IS THEREFORE ORDERED that:

6    (1) plaintiff's request for injunctive relief with
7  respect to the general practice of shackling violent detainees to
8  the drainage be, and the same hereby is, DENIED;

9    (2) plaintiff's motion for summary judgment with
10  respect to the claims that the general practice of shackling
11  violent detainees to the drainage is in violation of the
12  Constitution; that the individually-named defendants violated his
13  constitutional rights in following the general procedure to
14  employ the practice of shackling violent detainees to the
15  drainage grate; that defendant Griem is personally liable for his
16  co-defendants' use of excessive force; and that defendants Baker,
17  Reeve, Wade, and Britton used excessive force be, and the same
18  hereby is, DENIED;

19    (3) defendants' motion for summary judgment on all
20  claims against the County of Sacramento be, and the same hereby

21

22  it is undisputed that the medical staff was notified upon his
    detainment, (Decl. of John Houston Scott in Supp. of Pl.s' Mot.
23  for Summ. J. Ex. 2 ("Safety/Segregation Cell Incident Report")),
    and thus the only remaining question is whether anyone from the
24  medical staff responded.  Further, the fact that plaintiff was in
    the safety cell for longer than the eight hour limit appears to
25  be the fault of the "Watch Commander," who--according to the
    "Safety and Segregation Cell Use" manual--is in charge of "the
26  removal of an arrestee at any time."  (Decl. of John Houston
    Scott in Supp. of Pl.'s Mot. for Summ. J. Ex. 12 ("Safety and
27  Segregation Cell Use").)  Significantly, the "Watch Commander"
    listed on plaintiff's Incident Report is only referred to as
28  "Sgt. Sherrel," who to the court's knowledge is not a named
    defendant.

29

1  is, GRANTED;

2        (4) defendants' motion for summary judgment with

3  respect to the claim that the individually-named defendants were

4  deliberately indifferent to plaintiff's serious medical needs or

5  deprived plaintiff of his right to medical care be, and the same

6  hereby is, GRANTED.

7        (5) defendants' motion for summary judgement with

8  respect to the claim that defendants Baker, Reeve, Wade, and

9  Britton used excessive force be, and the same hereby is, DENIED;

10  and

11        (6) defendants' motion for summary judgment with

12  respect to the claim that defendant Griem is personally liable

13  for his co-defendants' use of excessive force be, and the same

14  hereby is, DENIED;

15  DATED:  November 26, 2007

16

17  _____

18  WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28

30