UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

DON ANTOINE,

        Plaintiff,

   v.

COUNTY OF SACRAMENTO, DARIN GRIEM, CHRIS BAKER, JOSEPH REEVE, GRIAN WADE, and CHRISTOPHER BRITTON

        Defendants.

_____/

NO. CIV. S-06-01349 WBS GGH

ORDER RE: MOTION FOR NEW TRIAL

----oo0oo----

Following the return of a jury verdict awarding plaintiff $20,000 in compensatory damages as well as $25,000 in punitive damages against each of defendants Baker, Reeve, Wade and Britton and $50,000 against defendant Griem, all individual defendants move for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure.

1

DISCUSSION

I. <u>Liability Issues</u>

    A. <u>Evidentiary Rulings</u>

Plaintiff's expert witness, Jeffrey Schwartz, was qualified to express expert opinions under Rule 702 of the Federal Rules of Evidence, and it would have been error to preclude him from testifying altogether. It is always a difficult task to keep expert witnesses on track, given that most of them consider it part of their job to effectively advocate the position of the side that hired them. This witness was no exception. Nevertheless, the court did the best it could to keep his testimony on point, ruling on objections when made and even commenting on the testimony when it was felt necessary.

Although defendants' attorney argues that the court should have prevented the witness from opining about "nationally accepted correctional practices," it was the witness's opinion that such practices existed, he was qualified to express that opinion, and it was not for the court to substitute Mr. Chalfant's, or its own, non-expert opinions on the subject.

The court permitted the witness to express his opinions regarding the propriety of the "grating" practice only in the context of whether the defendants' decision to employ that practice rather than the "prostraint" chair was appropriate, because there was evidence that the decision of which of those two alternative forms of restraint to use was committed to the discretion of the individual officers.

The court does not believe it was error to permit the witness to express those opinions.

Although the court made it abundantly clear to the jury that a finding of liability could not be based on what the defendants may have done in other cases, it did allow one of the defendants to be questioned about what he may have seen or done on other occasions for the limited purpose of "shed[ing] some light on what he did in this case here."  (Trial Tr. Apr. 4, 2008 12:6-9.)  The court still believes that was a correct ruling.

In sum, the court is satisfied that it did not commit error in its evidentiary rulings sufficient to justify a new trial on the issues of liability.

B.   Jury Instructions

Defendants first complain that the court did not give their Fourteenth Amendment instruction.  The court found defendants' proposed instruction objectionable in several respects.  For example, it began with the unqualified statement that, "Pretrial detainees may not be punished prior to an adjudication of guilt under due process of law."  The court felt this statement was overbroad without providing the jury with some definition of what it meant by "punishment."  To the lay person, punishment might be interpreted as any form of sanction. Yet, it could not be disputed that jailers have authority to promulgate reasonable rules of conduct for pretrial detainees and that reasonable sanctions may be imposed for violations of those rules.  Although defendants' proposed

instruction went on to talk about what might <u>not</u> amount to punishment, it nowhere attempted to define what was meant by that term.

Therefore, the court chose not to give defendants' instruction in the form presented.  Instead, the court went to substantial effort to craft an alternative instruction focusing more on the distinction between what types of action jailers are permitted to take and what types of action they are not permitted to take with regard to pretrial detainees.  The court's instruction eliminated some of the objectionable language but still included much of the language defendants had proposed.  After defense counsel objected to the court's proposed instruction on other grounds, the court decided to give plaintiff's instruction, which it found preferable to defendants'.

Plaintiff's instruction, which the court gave, was adequate.  "If the instruction as given sufficiently covers the case so that a jury can intelligently determine the questions presented, the judgment will not be disturbed because further amplification is refused.  The Court need not use the precise words of an offered instruction, and an instruction is sufficient if it correctly states the principle of law."  <u>Investment Serv. Co. v. Allied Equities Corp.</u>, 519 F.2d 508, 511 (9th Cir. 1975).

Moreover, even if the instructions on plaintiff's Fourteenth Amendment claim were inadequate, the error would have been harmless, because the jury found all defendants liable on plaintiff's Fourth Amendment claim as well as his

Fourteenth Amendment claim. The only complaint defendants now express with respect to the instructions on the Fourth Amendment claim is that the court failed to give defendant's so-called "personal participation" instruction.

Defendants' "personal participation" instruction would have read as follows:

> Liability under Section 1983 arises only upon a showing of personal participation by the defendants. In order to be individually liable under § 1983, individuals must personally participate in an alleged rights deprivation.

The court legitimately rejected this instruction for two valid reasons. First, it was entirely redundant and unnecessary. It was abundantly clear from the court's other instructions and the arguments of counsel that no one was suggesting the jury find defendants Baker, Reeve, Wade or Britton liable for something that some third party may have done. Second, and more importantly, the instruction would have conflicted with other necessary and appropriate instructions.

In Instruction No. 11 the jury was told that:

> A person subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made. Moreover, <u>personal participation is not the only predicate for section 1983 liability.</u> Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established <u>not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the</u>

5

<u>actor knows or reasonably should know would cause others to inflict the constitutional injury.</u>

(Emphasis added.)  This instruction, including the underscored language, was taken verbatim from the Ninth Circuit's decision in <u>Johnson v. Duffy</u>, 588 F.2d 740, 743-44 (9th Cir. 1978).  In the thirty years since that decision was published, not once has it been cited with disapproval by the Ninth Circuit or any other circuit.  To the contrary, that language was recently quoted again with approval in <u>Wong v. U.S. Immigration and Naturalization Serv.</u>, 373 F.3d 952, 966 (9th Cir. 2004).  It is the law.

Further, in Instruction No. 16, which both sides agreed was a correct statement of the law, the jury was properly instructed that defendant Griem could be liable in a "supervisorial capacity" under certain circumstances.  Defendants' "personal participation" instruction would have been at best confusing and at worst inconsistent with the court's other instructions.

The court accordingly finds no error in its jury instructions which would justify a new trial on the issues of liability.

C.  <u>Plaintiff's Attorneys' Alleged Misconduct</u>

Plaintiff's attorneys continually maintained that plaintiff was "hogtied" to the grate in the cell.  The witnesses at trial all defined that term as the process of binding one's hands and feet together behind his back.  That was not the way plaintiff was shackled.  The undisputed testimony was that although his feet were

shackled together and his hands were shackled together behind his back, his feet were not shackled to his hands. Notwithstanding this distinction, plaintiff's attorneys continued to argue that plaintiff was "hogtied."

While others with less trial experience may disagree, this court does not consider that to be misconduct. Even if it were, it was certainly insufficiently prejudicial to justify a new trial. The jurors knew exactly what the testimony was and could judge the credibility of plaintiff's attorneys' arguments for themselves.

### D. Weight of the Evidence

Defendants argue that the verdict was contrary to the clear weight of the evidence. Counsel's arguments here are essentially the same as he made, and the jury apparently rejected, at trial.

The arguments in support of the jury's verdict are set forth in plaintiff's brief, were summarized in plaintiff's attorneys' final arguments at trial, and will not be repeated here. Suffice it to say that the fact that the court may find defendants' arguments more persuasive, that the court may have been surprised by the verdict, or even that the court may disagree with the verdict does not constitute grounds to set it aside. There was sufficient evidence to sustain the jury's verdict on the issue of liability of each of the individual defendants.

## II. Damage Issues

### A. Compensatory Damages

The jury instructions which the court originally planned to give included the following instruction:

> The law which applies to this case authorizes an award of nominal damages. If you find for the plaintiff but you find that the plaintiff has failed to prove damages as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.

When plaintiff's attorneys at the time of settling instructions objected to this instruction, the court withdrew it. (Trial Tr. Apr. 10, 2008 101:10-21.) This instruction was a correct statement of the law. See Carey v. Piphus, 435 U.S. 247, 266 (1978) ("By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights.").

Without having time to fully research the question, the court's thinking at the time of acceding to the request of plaintiff's attorneys to withdraw the instruction was that it is an instruction designed to assist plaintiffs, not defendants, and if plaintiff's attorneys want to make the tactical decision to go for all of their claimed damages or nothing they ought to be able to do so. It turns out that other courts have agreed. See Oliver v. Falla, 258 F.3d 1277, 1281 (11th Cir. 2001)

("[Plaintiff's] counsel made a strategic decision to seek compensatory and punitive damages only, probably thinking that the jury would award nominal damages only if [plaintiff] requested them."); Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 240 (1st Cir. 2006) ("Our rule is plaintiff-friendly in the sense that it does not require that plaintiffs make a strategic choice whether to ask for a nominal damages instruction. Indeed, there are good reasons why a plaintiff may choose not to give a jury the 'out' of awarding nominal damages as an alternative to awarding compensatory damages.").

When the court proposed putting the nominal damages instruction back in after it allowed plaintiff to have his punitive damages instruction back, plaintiff's attorney again "strenuously" objected to it, so the court left it out. (Trial Tr. Apr. 10, 2008 129:7-16.) Unfortunately, however, this left the jury with no explanation of what to do if they found for the plaintiff on the issue of liability but believed defendants' theory that all of his injuries, as defined in the court's instructions, were sustained in the car accident and various scuffles with firefighters and City police officers before plaintiff was brought to the jail.

Although the court had withdrawn the nominal damages instruction at plaintiff's request, plaintiff requested no modification to the punitive damages instruction when it was reinserted. That instruction, number 19, informed the jury that "[p]unitive damages may

be awarded even if you award plaintiff <u>only nominal</u>, and not compensatory, damages." (Docket No. 123 (Jury Instruction No. 19) (emphasis added).) Thus, the jury was in effect told they could award "nominal" damages but were given no instruction as to the permissible value of such an award.

In <u>Memphis Community School District v. Stachura</u>, 477 U.S. 299 (1986), the Supreme Court explained that "[n]ominal damages, <u>and not damages based on some undefinable 'value' of infringed rights</u>, are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury . . . ." <u>Id.</u> at, 308 n.11 (emphasis added). In the absence of an instruction setting an award of nominal damages at $1.00, the jury was left to chose "some undefinable 'value' [for plaintiff's] infringed rights" if it found that plaintiff's evidence of actual damages was not sufficient or credible. <u>Id.</u>

The jury's confusion about whether it should compensate plaintiff for the abstract value of his constitutional rights became apparent when the jury submitted the following question during deliberations:

> On verdict form page #2 Question #2 the question reads:  Do you find that the plaintiff proved by a preponderance of the evidence that the excessive force was a substantial factor in bringing about plaintiff['s] injury, harm or damages[?]
>   (1) What is Harm?
>   (2) If answer "Yes" to any one of "Injury," "Harm" or

"Damages" = a "Yes"?[1]
(Docket No. 121 (Jury Notes 1).)  When the court discussed how to answer the jury's question with counsel for both parties, plaintiff's counsel insisted that the court explain that the three terms include constitutional injuries:

> THE COURT:  All right.  So do you think that I should tell them that injuries mean something different than harm and that harm means something different than damages or do you think I should tell them that injury, harm and damages is all what is meant by instruction No. 17?
> MS. DE VRIES:  I think that <u>if the term "injuries" in instruction No. 17 would include the harm from a constitutional injury</u>, then, yes, I think that that would be a reasonable interpretation of harm in instruction 17.
> THE COURT:  So how -- if you were answering question No. 17, what would you tell the jury?
> MS. DE VRIES:  I would tell the jury that the disjunctive three words -- harm, injuries or damages -- are described, as Your Honor said, in instruction 17 <u>with the clarification that the injury we're talking about here is not just physical, but it is also a constitutional injury</u>.  Because this is not a personal injury matter, it's a constitutional violation case.

(Trial Tr. Apr. 15, 2008 17:7-24 (emphasis added).)  While defense counsel stated that the latter half of plaintiff's requested explanation was "unnecessary," they did not draw the court's attention to the real problem with plaintiff's

---

[1] The verdict form, which was prepared by plaintiff's attorneys, contributed to the confusion by its use of the word "harm" in questions two and four, which the jury instructions neither defined nor used.

11

requested explanation: an award for "constitutional injuries" must be limited to $1.00.  (Id. at 19:14-16.)

In an effort to inform the jury that it could render a verdict for plaintiff even if it did not find actual damages--and to avoid using the word "nominal" that plaintiff's counsel so vehemently opposed--the court instructed the jury in accordance with plaintiff's request:

> The first question, what is harm?  In the context of this verdict form, harm has no different meaning than injury or damages. . . . I would invite your attention to instruction No. 17, which is the one that defines what may constitute injury or damages.  <u>I would also remind you that in this case, which arises under the Constitution, injury includes not just physical injuries, but constitutional injuries as they are discussed in instructions 10 and 11.</u>  Read all the instructions together, though.  Don't just isolate one or two instructions out of the context of the rest of them.

(Id. at 24:14-25-25:1-2.)  The use of the term "constitutional injuries"--combined with the instruction allowing the jury to award nominal damages and the omission of the $1.00 limit--invited the jury to award an unlimited amount of damages based on the importance of plaintiff's constitutional rights in lieu of awarding compensatory damages.  That was error, plain and simple.

In Memphis Community School District, the Supreme Court held that jury instructions "were improper because they did not require the jury to focus on the loss actually sustained by respondent . . . [but] invited the jury to speculate on matters wholly detached from the real injury occasioned respondent by the deprivation of the right [and]

. . . might have led the jury to grant respondent damages based on the 'abstract value' of the right to procedural due process-a course directly barred by our decision in Carey." 477 U.S. at 315-16.

"When damages instructions are faulty and the verdict does not reveal the means by which the jury calculated damages, '[the] error in the charge is difficult, if not impossible, to correct without retrial, in light of the jury's general verdict.'" Id. at 312 (citation omitted) (alteration in original). While the "effect of the erroneous instruction[s is] unknowable," neither the jury's verdict nor the verdict form give the court confidence that the jury intended the award of $20,000.00 to compensate plaintiff for his actual injuries. Id. The court, therefore, is faced with the very real possibility that the jury believed that it could award an unlimited amount of non-compensatory damages to "'compensate' [plaintiff] for the abstract 'value' of his" constitutional rights. Id. at 312-13.

Under the circumstances, the court cannot allow the compensatory damage award of $20,000 to stand. On the other hand, it would be inappropriate for the court to arbitrarily reduce the compensatory damages to one dollar. The only fair and viable alternative is to grant defendants' motion for a new trial on the issue of damages.

B.  Punitive Damages

"Courts reviewing punitive damages [are] to consider three guideposts: (1) the degree of

13

reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418 (2003).  In Instruction No. 19, the jury in this case was similarly told that "[i]n considering punitive damages, you may consider the degree of reprehensibility of the defendants conduct and the relationship of any award of punitive damages to any actual harm inflicted on the plaintiff."

Taking heed of the court's instruction, the jury may well have considered its finding of $20,000 "harm" in arriving at the amount of punitive damages to be awarded. While punitive damages of $25,000 and $50,000, respectively, might be regarded as having a rational relationship to $20,000, the jury very well might not have considered it to bear a rational relationship to the harm if measured by the nominal damage standard of one dollar.  Thus, the court cannot conclude with any confidence that the jury's punitive damage awards are divorced from its flawed award of actual damages.

Again, the court must conclude that the only fair and viable remedy is to allow the jury, upon new trial, to recalculate the amounts of punitive damages.  This does not mean that the second jury will be free to disregard the first jury's determination that some punitive damages should

be imposed. Defendants have not persuaded the court that there was any trial or instructional error sufficient to overturn the jury's finding of punitive damages against each defendant – only the amount of such damages.

III. <u>Conclusion</u>

Defendants are entitled to a new trial on the issues of damages only. The jury's determinations of liability and entitlement to punitive damages must remain intact. Upon new trial, the jury must be informed that each of the defendants have been determined to be liable to plaintiff on both his Fourth and Fourteenth Amendment claims under 42 U.S.C. § 1983, and that their job is only to determine the amount of damages proximately resulting from the violations. They must be instructed that if plaintiff fails to prove any damages resulting from such violations, they must award nominal damages not to exceed one dollar. Similarly, on the question of punitive damages they must be told that it is their job to determine only the amount of punitive damages to be assessed against each of the defendants, not whether such damages should be awarded.

FURTHER PROCEEDINGS

The court recognizes that reasonable minds might differ as to both the determination to grant defendants' motion for new trial on the issues of damages and the determination to deny the motion on the issues of liability. If the Court of Appeals in going to disagree with any pert of this Order, it would greatly benefit the parties and the court to know that before all the time and effort are

1  expended on a new trial.  Accordingly, the court would
2  consider certifying this Order for immediate appeal pursuant
3  to 28 U.S.C. § 1292(b) if either or both sides should wish
4  to pursue such an appeal.
5           This matter will be set for Status Conference on
6  Monday, July 14, 2008.  At that time, counsel for both sides
7  shall be prepared to inform the court whether they wish to
8  pursue an immediate appeal from this Order.  If so, they
9  shall present to the court a form of Order certifying such
10 appeal.  If not, they shall be prepared to set the matter
11 down for new trial on the issues of damages as discussed
12 above.
13          IT IS THEREFORE ORDERED that defendants' motion
14 for new trial be, and the same hereby is, DENIED on the
15 issues of liability, but GRANTED on the issues of the amount
16 of compensatory and punitive damages;
17          AND IT IS FURTHER ORDERED that this matter be set
18 for Status Conference at 2:00 p.m., on Monday, July 14,
19 2008.
20 DATED:  June 25, 2008

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

16